

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JERMAINE PRICE, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 05 C 671 |
| v. ) | |
| ) | Judge John W. Darrah |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Petitioner's, Jermaine Price's, *pro se* Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255.

In November 2002, Petitioner and twelve co-defendants were charged in a grand jury indictment with a scheme to defraud retailers by presenting counterfeit and stolen checks and presenting false identification cards to fraudulently confirm that they were the individuals whose names appeared on the counterfeit checks. On March 2, 2004, pursuant to a plea agreement, Petitioner pled guilty to Count Two, wire fraud, of the superseding indictment. In his plea, Petitioner admitted to the following facts:

> Beginning on or about July 1, 1998, and continuing until at least November 6, 2002, . . . defendant along with [co-defendants], knowingly devised, intended to devise, and participated in a scheme to defraud Target Stores and stores that utilized Certegy and Telecheck check clearing services, including Gap, Sears, T.J. Maxx, Carson Pirie Scott, Marshalls, and others, and to obtain money and property, by means of materially false and fraudulent pretenses and representations, and through the transmission of wire communication, in interstate commerce, certain signs, signals and sound, namely communications through telephone lines, in violation of Title 18, United States Code, Sections 1343 and 2.

> Specifically, defendant went to various merchants including Marshall Fields and Target, where he used false identification documents to pass counterfeit and stolen checks for merchandise. After being purchased, the merchandise was returned for cash, which the defendant would share with other individuals involved in the scheme, including Cocinette Smith. The defendant traveled to Indiana with members of the scheme to obtain fraudulent identification documents that were used to pass the counterfeit and stolen checks.
>
> As a result of defendant's conduct, he caused a loss of approximately $140,892.40.
>
> Defendant passed counterfeit checks at the following retail establishments in the Chicago area: Pep Boys, Sportmart, Circuit City, Gap, Inc., Carson Pirie Scott, Sephora, Borders Books, Mens Warehouse, The Casual Male, Lerner New York, Nine West, Work N Gear, Sport Authority, Target Corporation, as well as others.

Petitioner also reserved his right to appeal the validity of his plea or his sentence in the plea agreement.

On June 16, 2004, Petitioner was sentenced to 21 months' incarceration. In calculating Petitioner's sentence, the Court determined that pursuant to U.S.S.G. § 2F1.1(a), the base offense was level six. The offense level was increased by seven levels, pursuant to U.S.S.G § 2F1.1(b)(1)(H), because the amount of loss involved for which the Petitioner was deemed accountable was more than $120,000 but less than $200,000. The offense level was also increased by two levels, pursuant to U.S.S.G. § 2B1.1(b)(2), because the offense involved a scheme to defraud more than one victim. The resulting total offense level was fifteen. Over Petitioner's objection, the Court found that Petitioner was not entitled to a two-level reduction for acceptance of responsibility.

Petitioner raises two arguments: (1) his sentence was increased in violation of *Blakely v. Washington*, 124 S. Ct. 2531 (2004) (*Blakely*), and *United States v. Booker*, 125 S. Ct. 738 (2005) (*Booker*); and (2) ineffective assistance of counsel.

Section 2255 reads, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. This collateral relief is only available where there was "an error of law that is jurisdictional, constitutional, or constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994), quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1992). The district court must review the record and draw all reasonable inferences in favor of the Government. *See Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). However, Petitioner filed this petition *pro se*; therefore, his petition is entitled to a liberal reading. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Petitioner argues that the increases in his base level based on the amount of loss and a scheme to defraud more than one person violated his Sixth Amendment rights, citing *Blakely* and *Booker*. However, the holding in *Booker* is not retroactively applied and would not apply to Petitioner. *See McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005).

Petitioner also argues that his counsel was ineffective for failing to raise an *Apprendi* claim and Fifth and Sixth Amendment claims at sentencing and for failing to file an appeal.

Ineffective assistance of counsel claims not raised on direct appeal are not procedurally defaulted. *See Massaro v. United States*, 123 S. Ct 1690, 1694 (2003). Claims of ineffective assistance of counsel are reviewed under the two-prong test delineated in *Strickland v. Washington*,

3

466 U.S. 668 (1984) (*Strickland*). Under this test, a defendant must demonstrate both: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. *See Strickland*, 466 U.S. at 688. The deficiency prong requires a defendant to demonstrate that the representation he received was objectively unreasonable considering all of the circumstances. Counsel's conduct is strongly presumed to satisfy professional standards. *See Strickland*, 466 U.S. at 688-89. To demonstrate actual prejudice, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Strickland*, 466 U.S. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 696.

Petitioner's first ground for ineffective assistance of counsel fails because Petitioner has failed to demonstrate counsel's performance was deficient. Petitioner concedes in his petition that any objections citing to *Apprendi* or the Fifth and Sixth Amendment at sentencing, which was prior to the ruling in *Blakely* on June 24, 2004, would have been frivolous. Accordingly, Petitioner's counsel acted reasonably in not raising *Apprendi* or Fifth and Sixth Amendment claims at the time of sentencing.

Petitioner also argues that his counsel was ineffective for failing to file an appeal in light of the holding in *Blakely* that was issued the week following his sentence.

In the instant case, Petitioner does not contend that he asked counsel to file an appeal and counsel failed to file such appeal. Under that scenario, counsel's failure to file an appeal would constitute ineffective assistance of counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (*Flores-Ortega*). Instead, Petitioner contends that counsel was ineffective for failing to consult with

him about the filing of an appeal in light of the *Blakely* ruling within the applicable appeal timeframe. Under this scenario, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. The court must take into consideration all the information that defense knew or should have known in making this decision. *Flores-Ortega*, 528 U.S. at 480. Relevant factors include whether the conviction follows a trial or guilty plea, whether the defendant received the sentence for which he bargained, and whether the plea expressly reserved or waived some or all appeal rights. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal . . . ." *Flores-Ortega*, 528 U.S. at 480.

Here, Petitioner pled guilty and received a sentence consistent with the Government's position as set forth in the plea agreement. However, the plea agreement also reserved the right of Petitioner to appeal his plea and sentence. Importantly, during the 10-day period for an appeal to be filed following Petitioner's sentence, the Supreme Court issued its ruling in *Blakely*. In *Blakely*, the Court held that "any fact [other than the fact of a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt" as applied to a state sentencing scheme essentially identical to the Federal Sentencing Guidelines. *Blakely*, 124 S. Ct. at 2536. Based on the *Blakely* holding, Petitioner contends that an appeal should have been filed challenging the Court's increased sentence based on the amount of loss and a scheme to defraud more than one person. Under the relevant factors in this case, a rational defendant would have desired an appeal; and it was unreasonable for defense counsel

5

not to consult with Petitioner about an appeal. *See Flores-Ortega*, 528 U.S. at 481 ("We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal.")

As to the prejudice prong of the ineffective assistance of counsel test, under the circumstances present in the instant case, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. A *pro se* defendant need not demonstrate that his hypothetical appeal might have merit before any advocate has ever reviewed the record in search of potentially meritorious grounds for appeal. Rather, a defendant must demonstrate that, but for counsel's deficient conduct, he would have appealed. *See Flores-Ortega*, 528 U.S. at 486.

Here, Petitioner contends that he wanted to appeal his sentence during the applicable time to appeal and argues in his present motion some of the same grounds that would have been included in his appeal had he been consulted and had the appeal been filed. Petitioner has sufficiently demonstrated that he would have appealed but for his counsel's failure to consult him about an appeal.

Based on the above, Petitioner has demonstrated his counsel was ineffective for failing to file an appeal of his sentence. In light of a finding of ineffective assistance of counsel for failing to file an appeal, Petitioner is entitled to receive the right to an appellate proceeding, as if on direct appeal, with the assistance of counsel. *See Castellanos v. United States*, 26 F.3d 717, 720 (7th Cir. 1994) (the appropriate relief for petition under Section 2255 alleging ineffective assistance of counsel for failing to file an appeal is the right to an appellate proceeding with the assistance of counsel).

For the foregoing reasons, Petitioner's motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255, is granted in part. Petitioner has the right to an appellate proceeding as to 02 CR 1073, as if on direct appeal, with the assistance of counsel. Counsel is appointed through the Federal Defender Program.

Dated: August 24, 2005

JOHN W. DARRAH
United States District Judge